UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TERRANCE LAVONE EGERSON,

        Petitioner,

        v.                                Case No. 19-C-200

DAN WINKLESKI,

        Respondent.

## DECISION AND ORDER

Petitioner Terrance Lavone Egerson filed a petition for federal relief from his state conviction pursuant to 28 U.S.C. § 2254 on February 7, 2019. On April 6, 2016, a jury found Egerson guilty of five counts of knowingly violating a domestic abuse order and one count of stalking, with a previous conviction involving the same victim within the past seven years. Egerson was sentenced to four years of initial confinement and three years of extended supervision on the stalking count; one year of initial confinement and two years of extended supervision on two counts of knowingly violating a domestic abuse order; and two years of initial confinement and four years of extended supervision on the remaining three counts of knowingly violating a domestic abuse order. The court ordered that the sentences for violating a domestic abuse order run concurrent with an existing sentence, that the three-year sentences for violating a domestic abuse order run consecutive to each other, and that the remaining three domestic-abuse-violation sentences run consecutive to any other sentence. Egerson is currently incarcerated at New Lisbon Correctional Institution. In his petition, Egerson asserts that his right to self-

representation was violated when the trial court denied his request to represent himself. For the reasons that follow, the petition will be denied and the case dismissed.

## BACKGROUND

In March 2015, Egerson was charged with stalking and five counts of violating domestic abuse injunctions as a repeat offender stemming from Egerson's repeated contact and harassment of his wife. In August 2015, Egerson's first attorney, Justin Singleton, filed a motion to withdraw as counsel, citing a disagreement over trial strategy regarding whether the district attorney assigned to the case, who had observed certain conduct by Egerson, should be called as a witness. The trial court denied Singleton's request.

In October 2015, Singleton again moved to withdraw as counsel for Egerson. He explained at an October 26, 2015 motion hearing that Egerson did not have sufficient faith in his efforts or abilities to defend Egerson and that he did not believe he could effectively represent Egerson any longer. Egerson stated at the hearing that Singleton's representation had been "totally deficient" and that there had been a "total breakdown" in communication. Dkt. No. 13-19 at 8. Egerson did not request to represent himself at that time. The trial court granted Singleton's motion to withdraw and indicated that another attorney would be appointed for Egerson. *Id.* at 8–9. But the court cautioned:

> You think you know so much more about trial strategy and how to prepare a case and how to get ready for trial, we'll see how you do with your next lawyer. But here's the thing, Mr. Egerson. You're heading down a slope, based on this record, where you're going to find yourself . . . in a position where a court says you're waiving your right to counsel and you're going to be representing yourself, which would be the biggest mistake of your life.

*Id.* at 9. Egerson responded, "I understand." *Id.* He did not object to the appointment of counsel or express a desire to represent himself.

2

The parties and the court then began to discuss a date by which Singleton would turn over all discovery relating to the case. Egerson interjected and stated that the State had not turned over certain discovery. The following exchange occurred:

> THE COURT: Mr. Egerson, you're not the lawyer of record in this case. I'm not interested in—
>
> THE DEFENDANT: Well, you know what, Your Honor, let me represent myself and have co-counsel then.
>
> THE COURT: No.
>
> THE DEFENDANT: It seems like every time I try to do something that's benefiting me, every time there's a problem he—he's—I've been having a problem with [the assistant district attorney] ever since, I've been charged with 24 counts, man.
>
> THE COURT: Mr. Egerson—
>
> THE DEFENDANT: Let me represent myself and have no counsel.
>
> THE COURT: Better think about that one.
>
> THE DEFENDANT: I'm sick of him, man. I'm tired of [the ADA] charging me with hard charges. He's just continuing to charge me. I'm doing six years of bail jumping.

*Id.* at 10–11. The court advised that new counsel would be appointed by November 6, 2015, and the hearing ended.

There was no further mention of Egerson proceeding *pro se* in his case, and counsel was appointed and appeared on Egerson's behalf at a hearing two weeks later. Egerson was represented by counsel at the April 2016 jury trial. The jury found Egerson guilty of five counts of violating domestic abuse injunctions as a repeater and one count of stalking.

Egerson filed a post-conviction motion requesting a new trial because the trial court denied his constitutional right to self-representation. The trial court denied his motion. The Wisconsin Court of Appeals affirmed the trial court's decision. *See State v. Egerson*, No. 2017AP797-CR

3

(Wis. Ct. App. July 17, 2018), Dkt. No. 13-7. The Wisconsin Supreme Court subsequently denied Egerson's petition for review.

## ANALYSIS

Egerson's petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. Under AEDPA, a federal court may grant habeas relief only when a state court's decision on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" decisions from the Supreme Court, or was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d); *see also Woods v. Donald*, 575 U.S. 312, 315–16 (2015). A state court decision is "contrary to . . . clearly established Federal law" if the court did not apply the proper legal rule, or, in applying the proper legal rule, reached the opposite result as the Supreme Court on "materially indistinguishable" facts. *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision is an "unreasonable application of . . . clearly established federal law" when the court applied Supreme Court precedent in "an objectively unreasonable manner." *Id.*

This is, and was meant to be, an "intentionally" difficult standard to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Egerson asserts that his right to self-representation was violated when the trial court denied his request to proceed *pro se* and failed to conduct a proper colloquy. Dkt. No. 1-1 at 1. In *Faretta v. California*, 422 U.S. 806 (1975), the Supreme Court held that the Sixth Amendment protects

4

not only a defendant's right to be represented by counsel, but also his right to represent himself, without counsel. "This implicit constitutional right to self-representation belongs to all defendants, so long as they are mentally competent, and can knowingly and intelligently waive the right to counsel." *Freeman v. Pierce*, 878 F.3d 580, 586 (7th Cir. 2017) (citation omitted). The waiver must be made "clearly and unequivocally." *Faretta*, 422 U.S. at 835. In determining whether a defendant waived the right to counsel, the court will "indulge every reasonable presumption against waiver." *United States v. Hoskins*, 243 F.3d 407, 410 (7th Cir. 2001).

The Wisconsin Court of Appeals analyzed Egerson's self-representation claim under *Faretta*. It observed that a defendant "who wishes to invoke the right to self-representation must 'clearly and unequivocally' inform the trial court of this decision." *State v. Egerson*, 2018 WI App 49, ¶ 11, 383 Wis. 2d 718, 916 N.W.2d 833 (quoting *Faretta*, 422 U.S. at 835). It also explained that, if the defendant "establishes this request clearly and unequivocally, the trial court must then ensure that the defendant 'has knowingly, intelligently and voluntarily waived the right to counsel,' and that the defendant is 'competent to proceed *pro se*." *Id.* (quoting *Klessig*, 211 Wis. 2d at 203). The Wisconsin Court of Appeals, considering the record as a whole, concluded that Egerson failed to invoke his right to self-representation because his request for self-representation was equivocal. The court explained Egerson's exchange with the trial court as follows:

> Egerson's statements to the trial court, made within a very short time of each other, bounced from "let me represent myself and have co-counsel" to "let me represent myself and have no counsel." They were made during a hearing where Egerson's trial counsel's motion to withdraw was heard and granted, and Egerson had been advised that he would be getting a new attorney. However, the trial court included a word of warning to Egerson that his attorney had done a good job and there were no guarantees regarding the experience of the new attorney being assigned. Furthermore, the trial court noted that continued complaints about his attorney could result in Egerson "heading down a slope, based on this record, where you're going to find yourself in a position where a court says you're waiving your right to

5

> counsel and you're going to be representing yourself, which would be the biggest mistake of your life." Egerson replied that he understood. He did not mention wanting to represent himself at this point, and instead even seemed to be in agreement with the trial court's position.
>
> Later in the exchange, Egerson became upset after requesting and being denied a discovery request he made *pro se*; in fact, the trial court refused to entertain Egerson's request because Egerson was going to be assigned new counsel. It was at this point that Egerson made his statements about representing himself. By then, the trial court had already cautioned Egerson that he was "not a lawyer of record" in the case, and had told Egerson that he was "done talking this morning." Additionally, the record indicates that during this time, Egerson was focused on his complaints about alleged bias against him on the part of the assistant district attorney; he had expressed suspicions that his attorney—who had just been allowed to withdraw—had been acting in concert with the district attorney. In short, the hearing was contentious.

*Id.* at ¶¶ 27–28. The court of appeals observed that the trial court did not engage Egerson in any colloquy at the time Egerson mentioned self-representation because it did not appear that the trial court considered Egerson's statements to be a request for self-representation at all. The court of appeals noted that the trial court's response to Egerson is "indicative of an attempt to move the proceedings forward without additional interruptions." *Id.* at ¶ 29. The court also found that Egerson never broached the topic of self-representation at the hearing or during the rest of the proceedings related to his case. *Id.*

From those facts, the court of appeals could not conclude that Egerson's statements were a clear and unequivocal invocation of his right to self-representation and instead found that Egerson was disgruntled with his attorney and merely expressed an opinion that he could do a better job representing himself. The court determined that these musings do not rise to the level of invoking the right of self-representation and found that there was no violation of Egerson's right to self-representation. *Id.* at ¶ 30.

The court of appeals' application of federal law to the facts of Egerson's case was reasonable. The court examined the exchanges between the trial court and Egerson in detail and

found that Egerson's request to proceed without counsel was ambiguous at best. The court of appeals noted that Egerson only requested to proceed without counsel after the trial court refused to consider his discovery claim because he was not counsel of record. The court of appeals concluded that the trial court did not consider Egerson's statements to be a true desire to represent himself and that Egerson did not say anything further regarding self-representation when the court indicated that new counsel would be appointed by November 6, 2015. In fact, Egerson never broached the topic of self-representation at the hearing or during the rest of the proceedings related to his case, and Egerson accepted the appointment of successor counsel. In other words, the conclusion that Egerson did not make an unequivocal demand to represent himself was not unreasonable.

Egerson asserts that the trial court erred when it did not conduct a colloquy to determine Egerson's "true state of mind" regarding self-representation. Dkt. No. 27 at 3. But as the Seventh Circuit has recognized, *Faretta* does not require "a more searching inquiry whenever a defendant makes ambiguous, equivocal statements that could potentially be construed as indicating a desire for self-representation;" and instead "merely requires a court to assess whether a defendant has knowingly and voluntarily waived counsel when that waiver has been made clearly and unequivocally." *Duncan v. Schwartz*, 337 F. App'x 587, 593 (7th Cir. 2009) (internal quotation marks and citations omitted). In this case, Egerson's impulsive demands for self-representation were borne out of his frustration regarding the court's handling of his discovery concerns and is not a clear and unequivocal invocation of the right to self-representation. *See Adams v. Carroll*, 875 F.2d 1441, 1445 (9th Cir. 1989) (trial court may deny request for self-representation that is "a momentary caprice or the result of thinking out loud"). Because the Wisconsin courts

reasonably concluded that Egerson did not clearly and unequivocally invoke the right to self-representation, no further inquiry was required.

Alternatively, Egerson's acquiescence in the trial court's appointment of a new attorney and his failure to object during and over the five months preceding his trial demonstrate unequivocally that he changed his mind about exercising his right to self-representation. In any event, the state court's decision is neither contrary to, nor an unreasonable application of, clearly established federal law. Therefore, Egerson is not entitled to habeas relief, and the petition must be denied.

## CONCLUSION

For the reasons given above, Egerson is not entitled to federal habeas relief on any of his claims. His petition for a writ of habeas corpus is therefore **DENIED**, and the Clerk is directed to enter judgment dismissing the case. A certificate of appealability will be **DENIED**. I do not believe that reasonable jurists would believe that Egerson has made a substantial showing of the denial of a constitutional right.

Egerson is advised that the judgement entered by the Clerk is final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 3, 4. In the event Egerson decides to appeal, he should also request that the court of appeals issue a certificate of appealability. Fed. R. App. P. 22(b).

**SO ORDERED** at Green Bay, Wisconsin this 28th day of February, 2020.

> s/ William C. Griesbach
> William C. Griesbach, District Judge
> United States District Court